# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

J & J SPORTS PRODUCTIONS, INC.,

     Plaintiff,

     v.

PLAZA DEL ALAMO, INC., *trading as Plaza Alamo Inc., trading as Alamo Mexican Restaurant,*

     Defendant.

Civil Action No. TDC-15-0173

## MEMORANDUM OPINION

This case is before the Court on a Motion for Default Judgment filed by Plaintiff J & J Sports Productions, Inc. ("J & J"). Having reviewed the Motion and supporting documents, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the following reasons, the Motion for Default Judgment is GRANTED.

## BACKGROUND

J & J, a company that distributes sports programming, purchased the exclusive nationwide television distribution rights to a boxing match between Manny Pacquiao and Juan Manuel Marquez, IV (the "Pacquiao-Marquez fight"), which was broadcast as a pay-per-view program on the evening of December 8, 2012. J & J subsequently entered sublicensing agreements with various commercial establishments, including some located in Maryland, authorizing those entities to show the program to their patrons. The Pacquiao-Marquez fight was then transmitted via encrypted, closed-circuit television to establishments that had paid for a sublicense.

The Alamo Mexican Restaurant, operated by Defendant Plaza Del Alamo, Inc. (collectively, "the Alamo"), did not purchase a sublicense from J & J to show the Pacquiao-Marquez fight. However, at 12:17 a.m. on December 9, 2012, a private investigator entered the Alamo and saw that the restaurant was showing the Pacquiao-Marquez fight on five televisions. There was no cover charge to enter the restaurant. The investigator estimated that it had a capacity of approximately 200 people and counted between 167 and 183 customers at various times. According to J & J's sublicensing rate card, an establishment that could accommodate 100-200 people would be required to pay $4,200 for a sublicense; an establishment that could accommodate 200-300 people would be required to pay $6,200.

On January 21, 2015, J & J filed a Complaint against Alamo alleging violations of the Communications Act of 1934, 47 U.S.C. § 605 (2012); the Cable and Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553 (2012); and common law conversion. Alamo was properly served on February 18, 2015 but failed to file a responsive pleading or otherwise defend by the applicable deadline. On April 25, 2015, J & J filed a Motion for Clerk's Entry of Default, and that default was entered the same day. On June 15, 2015, J & J filed a Motion for Default Judgment seeking $151,500 in damages: the maximum of $100,000 for a violation of § 605, the maximum of $50,000 for a violation of § 553, and $1,500 for conversion. To date, Alamo has not responded to the entry of default or to J & J's Motion for Default Judgment.

## DISCUSSION

### I.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure

is shown by affidavit or otherwise, the clerk must enter the party's default." Under Rule 55(b)(2), after a default has been entered by the clerk, the court may, upon the plaintiff's application and notice to the defaulting party, enter a default judgment. Fed R. Civ. P. 55(b)(2). A defendant's default does not, however, automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) ("[T]rial judges are vested with discretion which must be liberally exercised, in entering [default] judgments and in providing relief therefrom."); *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002). The United States Court of Appeals for the Fourth Circuit has a "strong policy that cases be decided on their merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), but default judgment may be appropriate "when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005); *see H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970) ("[T]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.").

In reviewing a Motion for Default Judgment, the court accepts as true the well-pleaded factual allegations in the complaint relating to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780–81 (4th Cir. 2001). However, it remains for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action. *Id.*; *see also* 10A C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability."). If liability is

3

established, the court must then determine the appropriate amount of damages. *See Ryan*, 253 F.3d at 780–81. As to damages, the court cannot accept as true the factual allegations of the plaintiff, but must instead make an independent determination. *See Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *Lawbaugh*, 359 F. Supp. 2d at 422. To do so, the court may conduct an evidentiary hearing, *see* Fed. R. Civ. P. 55(b)(2), or may dispense with a hearing if there is an adequate evidentiary basis in the record from which to calculate an award. *See Pope v. United States*, 323 U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.").

## II.    Liability

47 U.S.C. § 605 and 47 U.S.C. § 553 address "different modalities of so-called 'cable theft.'" *J & J Sports Prods., Inc. v. MayrealII, LLC*, 849 F. Supp. 2d 586, 588 (D. Md. 2012). Section 605(a) prohibits the unauthorized interception or receipt of certain "radio" communications, 47 U.S.C. § 605(a), and has been interpreted to include the unauthorized interception of "digital satellite television transmissions." *MayrealII*, 849 F. Supp. 2d at 588 n. 3. Section 553(a) prohibits the unauthorized interception or receipt of certain cable communications. 47 U.S.C. § 553(a). Thus, § 605(a) likely would apply if the Alamo intercepted the Pacquiao-Marquez fight and showed it over satellite television, while § 553(a) likely would apply if the Alamo used cable television. J & J has not alleged which form of telecommunication the Alamo used, but asserts that both statutes apply to the Alamo's conduct regardless of the precise means of transmission. It is not clear, however, whether the statutes overlap sufficiently for both to apply regardless of whether the Alamo used satellite television or

4

cable television. *See, e.g.*, *United States v. Norris*, 88 F.3d 462, 468-69 (7th Cir. 1996) (rejecting the argument that "all conduct governed by § 553 also falls within the ambit of § 605"); *Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 133 (2d Cir. 1996) (noting that although the provisions overlap in some ways, there is not a "complete overlap between the coverage of §§ 605 and 553"). Nevertheless, the Court need not precisely define the relationship between § 605 and § 553 to resolve this case. Because, as a general principle, "courts can and should preclude double recovery," *Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 333 (1980), and because as discussed below, the damages to which J & J are entitled based on the facts alleged in the Complaint would be the same under either statute, it is not necessary to determine exactly which statute was violated. Instead, it is sufficient to conclude that J & J's allegation that Alamo intercepted and showed the Pacquiao-Marquez fight without J & J's authorization establishes that Alamo violated either § 605 or § 553, or both. *See J & J Sports Productions, Inc. v. Rumors Inc.*, No. CCB–14–2046, 2014 WL 6675646, at *2 (D. Md. Nov. 21, 2014) (noting that although J & J did not specify how the program was unlawfully intercepted, that omission was "not fatal" because the factual allegations established a violation of either § 553 or § 605).

As for J & J's conversion claim, historically, an action for conversion lies only for tangible property. *Allied Inv. Corp. v. Jasen*, 731 A.2d 957, 963-65 (Md. 1999). Maryland courts have expanded conversion to include intangible rights, but only in a very specific circumstance: when tangible documents evidence those intangible rights, and the tangible documents themselves have then been improperly taken. *Id.* at 965. J & J makes no allegations that Alamo has unlawfully taken any of J & J's tangible property or tangible documents that evidence J & J's intangible rights. J & J has therefore not established that Alamo is liable for

conversion. Furthermore, even if J & J stated a proper claim for conversion, it could not recover for that tort, because such a result would amount to a double recovery.

## III.    Damages

J & J seeks damages for the Alamo's violation of both § 605 and § 553. However, because J & J can recover only once for Alamo's unauthorized showing of the Pacquiao-Marquez fight, the Court awards damages under only one of these statutes. *See Gen. Tel. Co. of the Northwest, Inc.* 446 U.S. at 333; *Rumors, Inc.*, 2014 WL 6675646, at *2 (holding that awarding damages under both § 605 and § 553 would be an impermissible double recovery). Following the approach in other cases in this District, the Court will calculate damages under § 605, on the ground that it authorizes a greater award than § 553. *See, e.g., Rumors*, 2014 WL 6675646, at *2. The Court notes, however, that although the potential award under § 605 is greater, the award to which J & J is entitled would be the same under either statutory provision.

Under 47 U.S.C. § 605, a plaintiff may elect to seek recovery of either actual damages incurred, or statutory damages of between $1,000 and $10,000, "as the court considers just," for each unauthorized reception of a radio communication." 47 U.S.C. § 605(e)(3)(C)(i)(I)-(II). Enhanced damages of up to an additional $100,000 are also available, at the court's discretion, if "the violation was committed willfully and for purposes of direct or indirect commercial gain." 47 U.S.C. § 605(e)(3)(C)(iii). In the Complaint, J & J elected to seek statutory damages in the amount of $10,000, and enhanced damages of $100,000 for Alamo's violation of § 605. In its Motion, J & J seeks a default judgment in the amount of $100,000 pursuant to § 605. The Court considers each category of damages separately.

### A.    Statutory Damages

Under § 605(e), "the party aggrieved may recover an award of statutory damages for each violation of [the FCA] involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just."  47 U.S.C. § 605(e)(3)(C)(i)(II).  In determining a just amount of statutory damages, courts may calculate either the approximate amount of profits that the defendant received from the unauthorized broadcast or the amount of the plaintiff's lost earnings, as measured by the unpaid license fee, or may award a flat sum per violation. *See J & J Sports Prods., Inc. v. Waters,* No. FDW–12–779, 2013 WL 2948318, at *4 (W.D.N.C. June 14, 2014); *J & J Sports Prods., Inc. v. Quattrocche,* No. WMN–09–3420, 2010 WL 2302353, at *2 (D. Md. June 7, 2010).

Here, J & J has not provided any information regarding the Alamo's profits from showing the Pacquiao-Marquez fight.  It has, however, established the amount of the unpaid license fee.  According to J & J's rate table, an establishment that can accommodate 100-200 people would have to pay a license fee of $4,200, and one that can accommodate 200-300 people would have to pay a license fee of $6,200. Although J & J's investigator estimated that the Alamo had a capacity of 200, the headcount of patrons actually in attendance ranged from 167-183, so there is not sufficient evidence to establish that the higher license fee would have applied to the Alamo. Finding that the unpaid license fee was $4,200, the Court awards statutory damages in the amount of $4,200. *See J & J Sports Productions, Inc. v. El Rodeo Restaurant, LLC,* No. PJM-15-0172, 2015 WL 3441995 at *3 (D. Md. May 26, 2015) (awarding $4,200 in statutory damages to J & J in a similar case).

## B.    Enhanced Damages

J&J Sports also seeks enhanced damages to provide a total award of $100,000.  Under §
605(e), if "the court finds that the violation was committed willfully and for purposes of direct or
indirect commercial advantage or private financial gain, the court in its discretion may increase
the award of damages . . . by an amount of not more than $100,000."    47 U.S.C.  §
605(e)(3)(C)(ii).   In determining whether enhanced damages are warranted, courts consider
several factors:  (1) evidence of willfulness; (2) repeated violations over an extended period of
time; (3) substantial unlawful monetary gains; (4) advertising the broadcast; and (5) charging an
admission fee or charging premiums for food and drinks." *Quattrocche,* 2010 WL 2302353, at
*2; *El Rodeo Restaurant, LLC,* 2015 WL 3441995 at *3.

Here, the Alamo clearly acted for commercial advantage, and there is evidence of
willfulness in that Alamo exhibited the broadcast, which required that Alamo affirmatively take
steps to descramble J & J's encrypted signal.  *See J & J Sports Prods., Inc. v. Castro Corp.,* No.
11–CV–00188-AW, 2011 WL 5244440, at *4 (D. Md. Nov. 1, 2011) ("[S]ignals do not
descramble spontaneously, nor do television sets connect themselves to cable distribution
systems.") (quoting *Time Warner Cable v. Googies Luncheonette, Inc.,* 77 F. Supp. 2d 485, 490
(S.D.N.Y. 1999)).   But no evidence has been presented regarding repeated violations, substantial
monetary gains, advertising of the broadcast, or cover charges.

A willful violation for commercial gain warrants some enhanced damages to deter the
Alamo and other commercial entities from future violations, but there is no basis to support J &
J's request for the statutory maximum of $100,000.  Where none of the other factors provide a
basis for enhanced damages, the amount is necessarily limited.  *See Castro Corp.,* 2011 WL
5244440, at *5 (referencing awards ranging from two to six times the statutory damages in the

absence of repeat behavior or egregious willfulness). The Court therefore awards total damages of two times the statutory damages, for a total award of $8,400 ($4,200 in statutory damages and $4,200 in enhanced damages). In order to achieve higher multiples, J & J must offer more case-specific evidence relating to the enhanced damages factors, rather than reflexively seeking the maximum amount, and explain how those factors justify a specific enhanced damages award. *See El Rodeo Restaurant, LLC,* 2015 WL 3441995 at *4 (declining to award any enhanced damages because J & J has "repeatedly filed motions seeking excessive damages" despite the fact it has "been on notice, at least since *Quattrocche,* that in a case of non-egregious willfulness, it was not eligible to recover the maximum damages authorized by statute" and was not entitled to recover under § 553 and § 605 "for the same conduct"); *Rumors, Inc.,* 2014 WL 6675646 at *4 (same).

## CONCLUSION

For the foregoing reasons, the Motion for Default Judgment is GRANTED. J & J is awarded $8,400 in damages. A separate Order shall issue.

Date: January 12, 2016

THEODORE D. CHUANG
United States District Judge

9